UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM LOWE, on behalf of himself and all others similarly situated<br><br>801 N. Monroe St, Apt 901<br>Arlington, Virginia 22201<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL ASSOCIATION OF SECURITIES DEALERS AND EDS CORPORATION<br><br>Defendants. | Case No. _____<br><br>Hon. _____<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff William Lowe ("Lowe" or "Plaintiff") brings this action on his own behalf and on behalf of a class of similarly situated persons, against the National Association of Securities Dealers ("NASD") and EDS Corporation ("EDS") (the "Defendants"). For his complaint, Plaintiff alleges upon personal knowledge as to his conduct, and upon information and belief as to all other matters based upon the investigation of counsel completed to date, as follows:

## NATURE OF THE ACTION

1. This class action is brought on behalf of Plaintiff and a class (defined in ¶ 10 below) of all other individuals who took the Series 7 broker qualification exam administered by the NASD between October 1, 2004 and December 20, 2005 and incorrectly received a failing grade due to a software error or "glitch" in the automated scoring mechanism. According to a

1

January 6, 2006, press release issued by the NASD, approximately 1,882 people nationwide actually earned a passing grade on the exam, but an error in the software used to score the exam, resulted in these individuals incorrectly receiving a failing grade. This erroneous result was then reported by the NASD to securities brokerage firms who had sponsored the individuals taking the exam causing Plaintiff to have his employment terminated.

2. According to several news sources, an NASD spokesperson announced that the software error was the responsibility of Defendant EDS Corporation ("EDS"), which in accordance with a strategic relationship with the NASD provides a range of basic technology services to the NASD and its subsidiaries, including software and applications development and maintenance.

3. The content of the Series 7 broker qualification exam is developed by the New York Stock Exchange, which then contracts with the NASD to perform the ministerial functions of the actual test taking. The Series 7 exam is the exclusive opportunity for individuals to enter the securities field and become registered representatives with the authority to sell securities in the United States. Because of the software error in the automated scoring mechanism acknowledged by the NASD, Plaintiff and the Class of affected individuals were harmed in several ways including the loss of compensation and other benefits requiring a securities license.

4. This lawsuit seeks to obtain monetary and injunctive relief for the individuals who have been directly harmed by the conduct at issue.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2) because the matter in controversy exceeds the sum or value of $5,000,000 and is a class action in

which Plaintiffs and/or members of the proposed Class are citizens of one or more state different from Defendants. Class Action Fairness Act §4, 28 U.S.C. §1332(d)(2)(A) (2005).

6. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because, at all relevant times, Defendant NASD's principal place of business was the District of Columbia.

## THE PARTIES

*Plaintiff*

7. Plaintiff William Lowe is currently a resident of the State of Virginia. On July 1, 2005 he took the Series 7 Exam electronically in Culver City, California. At the time he took the exam, he was employed by the securities firm of UBS Financial Services ("UBS"). Upon completion of the exam, he and UBS were advised that he had failed the exam. On or about January 6, 2006, he was notified by the NASD that in fact he had passed the test and his failing grade reported to UBS was based on a software error.

*Defendants*

8. The NASD is a Delaware Corporation, with its headquarters in the District of Columbia. Directly and through a number of subsidiaries, it is a private sector regulator of the United States securities industry and provider of a range of financial regulatory services. Through an agreement with the New York Stock Exchange, the NASD provides the technology platform and delivery system for the provision of exams for registered securities representatives, including the entry level Series 7 exam at issue in this proceeding.

9. EDS is a Delaware corporation, with its principal executive offices located n Plano, Texas. The company's website, located at www.eds.com, states that more than 40 years ago it founded the information technology outsourcing industry. In an SEC 10K form filed March 24, 2005, EDS indicated that it has over 117,000 employees operating in approximately

60 countries throughout the world.  On its website the company describes itself as a "leading technology services company that provides business solutions."  The company provides business process outsourcing to clients in manufacturing, financial services, healthcare, communications, energy, transportation, and consumer and retail industries and to governments all over the world.  In the realm of application development, the March 24, 2005, SEC 10K form states, "We create new applications, providing full life cycle support… We define application requirements, analyze application characteristics, implement to a production environment and monitor performance for a warranted time."  Since 1998, EDS has had a strategic relationship with the NASD to provide a range of technology services, including the development and maintenance of software used in the delivery and scoring of the Series 7 exam.

## CLASS ACTION ALLEGATIONS

10.     This action is brought by Plaintiff on his behalf and as a class action, pursuant to Fed.R.Civ.P. 23 (b)(3), on behalf of the following class (the "Class"):

> All individuals who from October 1, 2004 through December 20, 2005 incorrectly received a failing grade on the Series 7 broker qualification exam as a result of a software error in the grading of the exam.

11.     The Class is so numerous that joinder of all Class members is impracticable.

12.     There are questions of law and fact common to the members of the Class that predominate over any questions affecting individual members, which include:

    a.     Whether the software error reported by the NASD on January 6, 2006 in the scoring of the Series 7 exam, resulted in the Plaintiff and Class receiving a failing grade when, in fact, they had earned a passing grade.

    b.     Whether the same software error reported by the NASD on January 6, 2006, relating to the Series 7 exam affected the scoring for the Plaintiff and the Class.

   c. Whether the Defendants had a contract with the Plaintiff and the Class to accurately and reliably calculate and report their score on the Series 7 exam.

   d. Whether Plaintiff and the Class were the intended beneficiaries of the agreement between EDS and the NASD.

   e. Whether the Defendants breached their contract with the Plaintiff and the Class by falsely reporting to them, and their sponsoring firms, that they had failed the Series 7 exam.

   f. Whether the Defendants had a duty to accurately and reliably calculate and report the results of the Series 7 exam and knew, or should have known, that a software error could impact the accuracy and reliability of the scoring for the Series 7 exam.

   g. Whether the Defendants were negligent in failing to take steps necessary to ensure that the Series 7 exam would be accurately and reliably scored.

   h. Whether the NASD was negligent in its representations to Plaintiff the Class and their sponsoring brokerage firms (and any other persons) by reporting failing exam scores when the Plaintiff and the Class had earned a passing grade.

   i. Whether Defendants tortiously interfered with the contractual relationship between Plaintiff and the Class and their respective employers by notifying the employers of an erroneous failing grade on the Series 7 exam that resulted in Plaintiff and Class members being terminated

   j. When the Defendants knew that a software error had impacted the accuracy and reliability of the Series 7 exam administered between October of 2004 and December of 2005.

   k. Whether, as a result of Defendants misconduct, Plaintiff and the Class are entitled to damages, equitable and other relief, and the amount and nature of such relief.

13. Plaintiff's claims are typical of the claims of the Class. Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

14. Plaintiff will fairly and adequately assert and protect the interests of the Class, and have retained attorneys experienced in class and complex litigation.

15. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons:

    a. the Class is readily definable;

    b. it is economically impractical for members of the Class to prosecute individual actions, because the amount which may be recovered by each individual Class member would be insufficient to support separate actions;

    c. the aggregate amount which may be recovered by individual Class members will be large enough in relation to the expense and effort in administering the action to justify a class action;

    d. Plaintiffs are seeking equitable and final injunctive relief with respect to the Class as a whole; and

    e. prosecution as a class action will eliminate the possibility of repetitious and potentially contradictory litigation.

16. A class action will cause an orderly and expeditious administration of the claims of the Class. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

17. Plaintiff anticipates no undue difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

18. Receiving a passing grade on the Series 7 exam is an absolute legal requirement for an individual to conduct securities business with the public.

19. The New York Stock Exchange (NYSE) developed the content and formulated the substantive aspects of the Series 7 exam. By agreement, the NYSE contracted with the

NASD to perform the ministerial tasks relating to the processing of the exam, including the development of the automated scoring mechanism. The NASD represents that it will perform these tasks accurately and reliably. According to an NYSE document available on the NASD web site entitled: *Content Outline for the General Securities Registered Representative Examination (Test Series 7)*, the exam is described in the following manner:

> The Series 7 Examination is the Qualification Examination for General Securities Registered Representatives. As a qualification examination, it is intended to safeguard the investing public by helping to ensure that registered representatives are competent to perform their jobs. Given this purpose, the Series 7 Examination seeks to measure accurately and reliably the degree to which each candidate possesses the knowledge, skills and abilities needed to perform the critical functions of a registered representative.

20. On behalf of the NYSE, the NASD reports that it processed the Series 7 exams of approximately 60,500 individuals from October 1, 2004 to December 20, 2005. The exam includes 250 multiple choice questions, given in two parts of 125 questions for each part. The total exam encompasses 6 hours (3 hours for each part). Passing the test enables a candidate to become a "General Securities Representative" and solicit, purchase/and or sell all securities products, including corporate securities, municipal securities, municipal fund securities, options, direct participation programs, investment company products and variable contracts.

21. The NASD offers the Series 7 exam electronically throughout the United States.

22. In October of 1998, the NASD and EDS announced a ten-year strategic alliance, with an announced value of $1.5 to $2.0 billion, whereby the NASD (and several of its subsidiaries) agreed to outsource to EDS significant aspects of its technology functions, including software development and maintenance. This outsourcing included technology and software used in the provision of the Series 7 exam.

23. In October 2004, 213 new questions were introduced into the database of questions for the exam.

24. A news release issued by the NASD on January 6, 2006, acknowledged that a grading error had been discovered in the Series 7 exam caused by a software "glitch" that improperly weighted the scoring for one or more of the 213 questions introduced in October 2004.

25. As a result of this error, 1,882 individuals incorrectly received a failing grade and should have instead passed the exam. The NASD has publicly apologized for the "problems [this] caused for the individuals and firms affected".

26. Of the 1,882 individuals, who according to the NASD incorrectly received a failing grade, over 1,000 have retaken the exam and passed; 200 have rescheduled to take the exam and as of yet 600 have not rescheduled an exam date.

27. According to published news reports, an NASD spokesperson Nancy Condon, stated that the NASD's information technology provider, EDS was responsible for the software error. Furthermore, the NASD reported that the technology platform used to provide the exam to applicants was based on 15 year old technology that they are seeking to upgrade and replace.

**Facts Relating to William Lowe**

28. Plaintiff took the Series 7 exam electronically on July 1, 2005, in Culver City, California at a Prometric Test Center. Plaintiff prepared for the exam by studying relevant material over three months for approximately 480 hours. At the time he was employed by the brokerage firm of UBS as an Unregistered New Financial Advisor.

29. Prior to taking the exam, Plaintiff signed in at the exam center. He believed that the exam would be accurately and reliably scored, graded and the true results reported to his employer.

30. Upon completing the test, Plaintiff was advised on line that he had "failed" the exam. Prior to leaving the testing center he was also provided with a written print out of his test result which was automatically generated and sent to the compliance department at his employer UBS Financial Services. As a result of his seeming "failure" of the exam, UBS terminated his employment with the company.

31. From July 1, 2005 to November 15, 2005 Plaintiff was unable to obtain employment in the securities field.

32. On or about January 6, 2006, Plaintiff was advised by the NASD that he had in fact passed the Series 7 exam and that the failing score he had received in July and reported to his employer, UBS was the result of a software error.

33. By letter dated, January 23, 2006 the NASD explained to Plaintiff that the "NASD has determined that a software error introduced into the automated scoring mechanism for the Series 7 exam affected a limited subset of individuals who sat for the exam between October 2004 and December 2005 ... Your examination result was among those affected, and you should have received a passing score". Based on this explanation, the NASD provided Plaintiff with a corrected score and removed the erroneous information from his CRD record.

## COUNT I

(Breach of Contract against the NASD)

34. Plaintiff hereby incorporates each of the preceding and subsequent paragraphs as if fully set forth herein.

35. By submitting applications and fees on their behalf to the NASD in connection with taking the Series 7 Exam, the Plaintiff and the Class members entered into a contract with the NASD.

36. The contract contained implied provisions that the NASD would correctly and accurately score the Series 7 Exam.

37. The NASD breached its contract when it incorrectly scored the Series 7 Exam taken by Plaintiff and the Class.

38. As a result of the NASD's breach, Plaintiff and Class members suffered damages as described herein.

39. The damages suffered by Plaintiff and Class members were the natural and forseeable consequences of the NASD's conduct.

## COUNT II

(Breach of Contract against EDS)

40. Plaintiff hereby incorporates each of the preceding and subsequent paragraphs as if fully set forth herein.

41. EDS had a strategic relationship and agreements with the NASD to provide a wide range of information technology and related services, including software development and maintenance. Part of that agreement included developing and performing the functions relating to the automated scoring function for the Series 7 exam.

42. Plaintiff and the Class were the intended third-party beneficiaries of the agreement between the NASD and EDS to perform the automated scoring function for the Series 7 exam.

43. EDS, in breach of its agreement to the NASD, failed to accurately and reliably develop and deliver an automated scoring function for the Series 7 exam.

44. As a result of the EDS's breach, Plaintiff and Class members suffered damages as described herein.

45. The damages suffered by Plaintiffs and Class members were the natural and forseeable consequences of the EDS's conduct.

## COUNT III

(Negligence by the NASD and EDS)

46. Plaintiff hereby incorporates each of the preceding and subsequent paragraphs as if fully set forth herein.

47. The NASD and EDS owed Plaintiff and the Class the duty of reasonable care, which they breached.

48. The NASD and EDS were negligent in performing these duties, rendering the NASD and EDS liable/and or strictly liable, for the following reasons:

    a. Failing to properly score and scale the Series 7 exam;

    b. Failing timely to implement effective audit or quality control procedures under which the Series 7 Exams are scaled and scored on a consistent basis;

    c. Failing to implement appropriate procedures to prevent errors or inaccuracies;

    d.     Failing to oversee and supervise its employees or independent contractors who had the responsibility to develop and implement software to be used in the scoring and accurate reporting of the Series 7 exam;

    e.     Failing to immediately notify Plaintiff, the Class, and the sponsoring securities firms of incorrect scoring of the Series 7 exam ; or even the possibility of incorrect scoring of the exam;

    f.     Failing to replace or update the software and technology platform used to scale and properly score the Series 7 exam; and

    g.     Any and all other acts of negligence, recklessness, and omissions to be proven through discovery or at the time of trial of this matter, all of which are in contravention of the duties imposed on the NASD and EDS in favor of Plaintiffs and Class members.

49. As a result of the NASD and EDS's breach of their legal duties, Plaintiff and Class members suffered damages as described herein;

50. The damages suffered by Plaintiffs and Class members were all general and special damages arising from the natural and foreseeable consequences of the NASD and EDS's conduct.

## COUNT IV

**(Negligent Misrepresentation against NASD)**

51. Plaintiff hereby incorporates each of the preceding and subsequent paragraphs as if fully set forth herein.

52.  The NASD owed Plaintiff and the Class the duty to provide them, and their sponsoring securities firm with accurate scores on the Series 7 exam.

53.  The NASD negligently misrepresented to Plaintiff and the Class (and others) that they had failed the Series 7 exam when, in fact, they had passed.

54.  The NASD negligently misrepresented to sponsoring securities firms designated by Plaintiff and Class members as exam score recipients, that Plaintiff and Class members had failed the exams when, in fact, they had passed.

55.  The NASD also negligently misrepresented that it had the procedures in place to ensure its correct scoring of the Series 7 exams and to ensure that, if scoring errors occur they will be detected promptly and will not reoccur.

56.  NASD represents to the public and to test takers that scores will be accurately reported.

57.  The NASD breached its duty when it made the above representations and failed to implement or use appropriate procedures to insure the correct scoring and to prevent or detect scoring errors.

58.  The NASD provides scores on the Series 7 exam for the benefit (and regulatory requirements) of the Plaintiff and the Class.

59.  Plaintiff and the Class justifiably relied upon the NASD's erroneous scoring of the exam and reasonably believed they had failed the exam when, in fact, they had passed.

60.  The sponsoring securities firms designated by Plaintiff and the Class as score recipients, justifiably relied upon the NASD's erroneous scoring of the Series 7 exam. These sponsoring securities firms reasonably took action adverse to Plaintiff and the Class as a direct result of learning of the incorrect exam results, including termination.

61.     As a result of the NASD's negligent misrepresentation, Plaintiff and the Class members suffered damages as described herein.

62.     The damages suffered by Plaintiff and the Class were all general and specific damages arising from the natural and foreseeable consequences of the NASD's conduct.

## COUNT V

(Tortious Interference of Contractual Relations by the NASD and EDS)

63.     Plaintiff hereby incorporates each of the preceding and subsequent paragraphs as if fully set forth herein.

64.     Plaintiff and the Class had contractual employment agreements with securities firms at the time they took the Series 7 exam.  Under NASD Rules, individuals cannot sit for the exam without being employed by a licensed securities firm.

65.     Defendants knew, or should have known, that Plaintiff and the Class had contractual employment agreements with securities firms.

66.      By Defendants intentionally causing an erroneous score on the Series 7 exam to be reported to these employer securities firms Plaintiff and Class members were terminated from their employment.

67.     As a result of the termination of employment caused by Defendants' conduct, Plaintiff and the Class members suffered damages as described herein.

68.     The damages suffered by Plaintiff and the Class were all general and specific damages arising from the natural and foreseeable consequences of Defendants conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all other individuals similarly situated, prays for judgment as requested above against Defendants and further prays for:

A. An order certifying this case as a class action and appointing Plaintiff as the lead plaintiff and his counsel as lead counsel pursuant to Fed.R.Civ.P. 23(g);

B. Determine Defendant's liability for damages;

C. Determine declaratory and injunctive relief;

D. Award restitution, rescission and damages;

E. Award punitive damages where legally appropriate;

F. Award prejudgment and post-judgment interest on all damages as allowed by law;

G. Award from a common fund created, attorneys' fees and the costs of filing and litigating this suit;

H. Award such other relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: 2/15, 2006

                          Respectfully Submitted,

                          By: _____

Jonathan W. Cuneo (DC Bar 939 389)
Steven N. Berk (DC Bar 432870)
David W. Stanley (DC Bar 174318)
William H. Anderson
CUNEO GILBERT & LADUCA
507 C Street, NE
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813

Alan Lescht (DC Bar 441691)
ALAN LESCHT & ASSOCIATES
1050 17th Street, NW
Washington, DC 20036
Telephone: (202) 463-6036
Facsimile: (202) 463-6067

**ATTORNEYS FOR PLAINTIFFS**